Benjamin **LUTTRELL**, Plaintiff–
Appellant,

v.

Julie **NICKEL**, Defendant–Appellee.

No. 96–3651.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 22, 1997.*

Decided Nov. 19, 1997.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a); Cir. R. 34(f).

Benjamin Luttrell (Submitted), Green Bay Correctional Institution, Green Bay, WI, for Plaintiff–Appellant.

Stephen J. Nicks, Office of the Attorney General, Wisconsin Dept. of Justice, Madison, WI, for Defendant–Appellee.

Before FLAUM, RIPPLE and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Benjamin Luttrell, an inmate currently incarcerated at the Green Bay Correctional Institution in Green Bay, Wisconsin, brought suit pro se under 42 U.S.C. § 1983. Luttrell's complaint alleged that while he was housed at the Dodge Correctional Institution (DCI) in Waupun, Wisconsin, Julie Nickel, a sergeant at the prison, violated his Eighth Amendment right by failing to protect him from a sexual assault by another inmate and by not transferring him from a cell housing a psychologically disturbed inmate. The district court granted Sergeant Nickel's motion for summary judgment concluding that Luttrell had failed to support his allegations that Sergeant Nickel acted with the requisite deliberate indifference for a valid Eighth Amendment claim. Luttrell appeals and also argues that the district court improperly denied his motion to amend his complaint and his repeated requests for the appointment of counsel. We affirm.

Construing the record in the light most favorable to Luttrell, as a new arrival at DCI in June, 1994, he was approved for double celling. He was placed in a double cell with an inmate who was "receiving heavy doses of psychiatry [sic] medication repeatedly through-out the day," issued by Sergeant Nickel. Luttrell alleged that his cellmate exhibited psychological problems which included a voice in his head instructing him to make a "sacrifice" by killing someone.

On July 6, 1994, Luttrell complained to an officer about his cellmate's "mental behavior" and requested a new cellmate. The officer summoned Sergeant Nickel to listen to Luttrell's complaint. She responded by laughing and stating that his cellmate " 'would be alright as long as he take[s] his medication,' " and that he would have to talk to a "white

shirt" (a lieutenant or higher ranking official) because she did not have the authority to transfer him or his cellmate to a new cell.

Luttrell did not follow up on Sergeant Nickel's advice to raise his complaint with a higher official. Instead, nine days later, as he was lying on his bed asleep, he awoke to find his cellmate standing at the side of his bed with no clothes on, masturbating with one hand and rubbing cocoa butter onto Luttrell's upper thighs and buttocks. In response, Luttrell used a sock containing a padlock to prevent any further assault by his cellmate. Even though Luttrell did not strike his cellmate with this weapon, he was nevertheless placed in temporary lockup, and his cellmate was placed on observational status. Luttrell was subsequently found guilty of possessing a weapon in violation of disciplinary regulations and received a "reprimand" for the infraction.

■ We review the district court's grant of summary judgment de novo. *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir.1997). " '[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.' " *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (quoting *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.1988)). However, the Eighth Amendment's prohibition of cruel and unusual punishment is not violated by every injury inflicted by one inmate on another. *Langston v. Peters,* 100 F.3d 1235, 1237 (7th Cir. 1996).

■ Luttrell asserts that Sergeant Nickel's failure to transfer him to a new cell was a violation of a "ministerial duty," as well as a violation of guidelines that were created in response to a court order in *Delgado v. Cady,* 576 F.Supp. 1446 (E.D.Wis.1983). *Delgado* is not controlling in this situation because that case involved a class action by inmates at the Waupun Correctional Institution (WCI), whereas Luttrell was housed at DCI at all times relevant to this case.

■ Instead, Luttrell needed to show that Sergeant Nickel knew that there was a substantial risk that his cellmate would seriously harm him and that she failed to take any action. *See Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978. Sergeant Nickel admitted that she spoke to Luttrell on or about July 6, 1994, at the request of an officer. In her affidavit she stated that when she spoke with him she inquired whether the cellmate had ever hurt him, to which he replied "no." Sergeant Nickel claimed that at the time Luttrell informed her that his cellmate was crazy, she was unaware of the identity of his cellmate. Luttrell countered that Sergeant Nickel issued the medication to his cellmate and that she specifically stated that the cellmate would be all right if he took that medication. Viewing all facts and inferences in the light most favorable to Luttrell, as we must, we accept Luttrell's version of events and assume that Sergeant Nickel knew the identity of his cellmate.

In *Haley v. Gross,* 86 F.3d 630 (7th Cir. 1996), we affirmed a jury finding of deliberate indifference in a case where prison officials repeatedly refused a prisoner's request to be separated from his cellmate. As in this case, *Haley* involved a prisoner sharing a cell with a mentally disturbed inmate. In *Haley,* the mentally disturbed cellmate started a fire in the cell, killing himself and severely burning the other prisoner. However, *Haley* differs from the case before us because the facts there would have permitted a jury reasonably to infer that the prison officials acted with deliberate indifference in light of their knowledge of the events leading up to the fire. In *Haley,* both inmates asked to be separated numerous times during the four or five days preceding the fire, and several prison officials had to be called to their cell on the night of the fire when a volatile argument occurred between the cellmates and they were "ready to start physically fighting." *Haley,* 86 F.3d at 637. The prison officials were also informed that the mentally disturbed inmate had threatened and intimidated his cellmate, and knocked down his belongings. *Id.* The mentally disturbed inmate also specifically told the prison officials that he would burn down the cell if the prison officials walked away. *Id.* The cell in which the inmates were housed had also been placed on deadlock status, which meant that it could only be opened with a special key.

There was an empty cell located just two cells away from the inmates and numerous other cells located in the same cellhouse that were either empty or contained only one inmate. *Id.* at 639. The prison officials failed to separate the cellmates after these events and later that evening the cell was set on fire.

Unlike the prison officials in *Haley*, Sergeant Nickel did not have actual knowledge of a substantial risk of harm to Luttrell. Her failure personally to investigate the cellmate's mental state and her response to his request with laughter did not amount to deliberate indifference. "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 980, 136 L.Ed.2d 863 (1997). Sergeant Nickel had no reason to believe the cellmate was particularly dangerous if he was taking medication, and she informed Luttrell how to pursue his complaint. She cannot be blamed for the fact that Luttrell did nothing for the next nine days. On these facts, Luttrell did not establish a genuine issue of fact regarding deliberate indifference and Sergeant Nickel was entitled to summary judgment.

■ Luttrell also argues that the district court erred in denying his motion to amend the complaint to add three defendants. He is wrong. The district court had good reasons for its action. The motion was filed ten months after the cut-off date to amend pleadings, after discovery was complete, and when Sergeant Nickel's summary judgment motion was ready for disposition. Luttrell did not explain his delay in filing the motion nor did the amended complaint include any allegations of personal responsibility by the proposed additional defendants. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

■ Last, Luttrell argues that the district court should have granted his requests for counsel. The court reasoned that the facts were relatively straightforward in this case and that Luttrell was able to present a clear complaint, conduct discovery requests, and file numerous motions. However, Luttrell asserts that he not only was a "functional illiterate," but that he also had to rely extensively on "jailhouse lawyers" to prepare his pleadings and motions.

■ This court reviews a district court's denial of a motion for appointment of counsel for an abuse of discretion. *Zarnes v. Rhodes,* 64 F.3d 285, 288 (7th Cir.1995). Although civil litigants do not have a constitutional or statutory right to counsel, the district court has the discretion pursuant to 28 U.S.C. § 1915(e) to request attorneys to represent indigents in appropriate cases. *Id.* "In deciding whether the district court abused its discretion in failing to appoint counsel, 'the necessary inquiry is . . .: given the difficulty of the case, did the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel have made a difference in the outcome?' " *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 554 n. 1 (7th Cir.1996) (quoting *Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993)). Although a good lawyer may have done better than Luttrell, that is not the test, for if it was "district judges would be required to request counsel for every indigent litigant." *Farmer,* 990 F.2d at 323. Even though Luttrell did not appear competent to try this case himself, he had the assistance of "jailhouse lawyers." In light of the discretion afforded to the district court and the fact that the presence of counsel would not have altered the outcome, we hold that the court did not abuse its discretion.

AFFIRMED.