NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2009*
Decided December 23, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-3807

BRIAN JONES,
    *Plaintiff-Appellant*,

    *v.*

ROGER WALKER, JR., et. al.,
    *Defendants-Appellees*.

Appeal from the United States District
Court for the Southern District of Illinois.

No. 04 CV 00761

Michael J. Reagan,
*Judge*.

**O R D E R**

Brian Jones, an Illinois prisoner, was housed at Lawrence Correctional Center during 2004 and had a number of problems with the way Lawrence was run. He is black and always had black cell mates; this led him to conclude that inmates are assigned to cells based solely on race. Further, between April and July 2004 the prison's tap water allegedly became rust-colored and made Jones sick, but officials rejected his request to be tested for radiation poisoning. Jones also says that employees went through his cell and opened an

---

*After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

item of legal mail, placed him in segregation without justification, and assaulted him. In October 2004, after his grievances about these problems had been rejected, Jones filed suit. The district court dismissed most of his claims at initial screening, *see* 28 U.S.C. § 1915A, but allowed Jones to proceed with his claims that the cell assignments violated the Equal Protection Clause and that the defendants were deliberately indifferent to a serious medical need by refusing to test him for exposure to radiation. On those claims the court later granted summary judgment for the defendants.

On appeal, Jones first argues that the district court erred in granting summary judgment on his equal protection claim. Race-based classifications in prison are presumptively suspect and subject to strict scrutiny, *Johnson v. California*, 543 U.S. 499, 509 (2005), but racial segregation that results from policies based on a "bona fide, colorblind concern" for prisoner safety does not violate the Equal Protection Clause, *Harris v. Greer*, 750 F.2d 617, 619 (7th Cir. 1984). Although Jones introduced affidavits from several inmates who assert that blacks and whites have never celled together at Lawrence, defendant Garnett's affidavit states that inmates of different races were occasionally—though rarely—celled together while he was warden, and that this infrequency was the unintentional byproduct of efforts to promote safety and limit gang violence. Garnett explained that many gangs are organized along racial lines, preach racial superiority, and encourage violence against other races. Efforts to reduce gang violence are not discriminatory, and Jones's contention that there is not a full-fledged "racial gang war" at Lawrence does not undermine their legitimacy. *See Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006) ("An interest in curtailing violence within prison walls is compelling."); *Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005) (acknowledging "the reality that prison gangs are a manifest threat to prison order"); *Harris*, 750 F.2d at 619. The district court properly granted summary judgment because Jones did not produce any evidence undermining the warden's explanation for the cell assignments at Lawrence and showing that inmates were assigned to cells because of, not merely in spite of, their race. *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Jones also argues that the district court incorrectly granted summary judgment on his Eighth Amendment medical claim, but he did not show an objectively serious medical condition or that officials were indifferent to that condition. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009). Jones submitted affidavits confirming that Lawrence's drinking water was discolored from April to July 2004, but the defendants produced lab reports establishing that it was not contaminated. They also provided Jones's medical records from the same period showing that he was regularly seen by medical staff and was not seriously ill, so there was no evidence that his needs were not met. *See Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999). Further, although Jones filed a grievance when the medical staff at Lawrence refused to test him for radiation exposure, he did not show that the defendants' involvement in denying the grievance

constituted deliberate indifference.  The defendants permissibly relied on the medical staff's professional assessment that a test was unnecessary.  *See Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008).

Jones next challenges the district court's denial of his request for assistance in obtaining counsel.  The district court did not abuse its discretion in denying Jones's request because the court applied the correct legal standard and based its decision on facts supported by the record.  *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc).  The district court initially determined that Jones had not made a reasonable effort to obtain counsel, but on reconsideration the court denied his request based on its determination that his claims were not complex and that he could competently litigate them.  This was the appropriate inquiry, *see id.* at 654-55, and the record supports the court's conclusion that an attorney was not necessary during the pretrial phase of the litigation: Jones had personal knowledge of the facts relevant to his claims, a basic understanding of procedural rules, and some access to a law library, copy machine, and postal services.  *See Jackson v. Kotter*, 541 F.3d 688, 700-01 (7th Cir. 2008).

Jones also contends that the district court erred in denying him "full discovery."  He insists that if all of his discovery requests had been granted he would have survived summary judgment on his claims of racial segregation and deliberate indifference, but he does not identify any of the discovery rulings he contests.  This undeveloped argument gives us no reason to conclude that the district court abused its discretion.  *See Tenner v. Zurek*, 168 F.3d 328, 330-31 (7th Cir. 1999); *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 528 (7th Cir. 1998).

Finally, Jones argues that the district court improperly dismissed a number of his claims on initial screening.  *See* 28 U.S.C. § 1915A.  First, he contests the dismissal of his claim that his cell was searched and his property destroyed in violation of the Fourth and Fourteenth Amendments.  The district court was correct to dismiss this claim.  The Fourth Amendment's proscription against unreasonable searches does not apply to prison cells. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *Hanrahan v. Lane*, 747 F.2d 1137, 1139 (7th Cir. 1984).  In addition, a state employee's unauthorized acts depriving a prisoner of personal property do not violate the Due Process Clause if state law provides a meaningful post-deprivation remedy, and Illinois law does.  *See Hudson*, 468 U.S. at 533; *Murdock v. Washington*, 193 F.3d 510, 512-13 (7th Cir. 1999); *Kimbrough v. O'Neil*, 523 F.2d 1057, 1059 (7th Cir. 1975).

Second, Jones argues that the district court erred in dismissing his claim that a mail clerk improperly opened one piece of legal mail, but his allegations are insufficient to state a constitutional claim.  Jones does not allege that the act of opening his mail adversely

impacted his ability to litigate a specific matter. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005); *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998); *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996). Nor does he allege that this incident was part of an ongoing practice of interfering with his legal mail. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 306 (7th Cir. 1993).

Third, Jones challenges the dismissal of his claims that he was unconstitutionally placed in segregation. He contests both his repeated segregation for declaring hunger strikes and a nine-day period of confinement that he now argues was imposed in retaliation for filing grievances. The district court correctly dismissed these claims. Although inmates have a Fourteenth Amendment liberty interest in avoiding placement in conditions posing significant hardships atypical of ordinary prison life, *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005); *Sandin v. Conner*, 515 U.S. 472, 484 (1995), they do not have a liberty interest in avoiding placement in discretionary segregation, meaning segregation "imposed for administrative, protective, or investigative purposes," *Townsend v. Fuchs*, 522 F.3d 765, 771-72 (7th Cir. 2008). Jones's complaint reveals that the segregation he challenges was discretionary: during hunger strikes he was segregated for his protection, and the nine-day segregation resulted not from his filing of grievances but from the need to investigate after he mailed the warden a letter saying that he would defend himself if accosted by an officer.

Lastly, Jones argues that the district court should not have dismissed his claim that a guard violated the Eighth Amendment by pushing him into his cell, and that officials then retaliated against him for reporting the incident. But on these allegations Jones pleaded himself out of court. The de minimis use of force does not violate the Eighth Amendment. *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006); *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000). Although Jones now asserts that the force he experienced was not de minimis, his complaint and attachments alleged the contrary. His grievance form about the incident (which he attached to his complaint) alleges that the guard "pushed [him] hard," and his complaint asserts only that his arm was bruised. A single shove that results in bruising is de minimis force that will not support a claim of excessive force. *DeWalt*, 224 F.3d at 620. Jones's grievance form also contradicts his claim of retaliation. He wrote that he was placed in segregation after he declared a hunger strike and remained there while officials investigated a disciplinary ticket that the guard who pushed Jones gave him for disobeying orders. This is the sort of "administrative, protective, or investigative" segregation that does not implicate the Constitution. *See Townsend*, 522 F.3d at 771.

Jones raises additional arguments on appeal, which we have considered, but they are meritless and do not warrant further discussion.

Accordingly, we AFFIRM the district court's judgment.