NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 4, 2017[*]
Decided May 5, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-3470

| | |
|---|---|
| CORNELL SMITH, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 13-cv-600-wmc |
| K. ERICKSON, et al., *Defendants-Appellees*. | William M. Conley, *Judge*. |

**O R D E R**

Cornell Smith filed suit under 42 U.S.C. § 1983 claiming that administrators at Waupun Correctional Institution had violated the Constitution by restricting his participation in recreational activities for a total of six months. Prison staff had thought that Smith was skipping Friday recreation sessions when in fact he had been attending a weekly religious service scheduled at the same time. The district court dismissed the

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. We have agreed to decide this case without oral argument because the appellant's brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

complaint at screening. *See* 28 U.S.C. § 1915A. We affirm the dismissal because Smith's complaint fails to state a cognizable constitutional claim.

Smith alleges that in August 2012 guards told him he no longer could attend "structured recreation." In a recent report, the prison describes its recreation program as providing "facilities, equipment, and organization in a variety of areas for inmates with active or passive interests." Active interests include "basketball, volleyball, handball, table tennis, and weight lifting." Board games and domino competitions are among the passive interests available to inmates who are uninterested or unable to compete in physically demanding sports. The "structured recreation" program is designed to give inmates a chance to participate in activities if, because of work assignments or other program commitments, they cannot attend regular recreation sessions with other inmates in their housing unit. The guards did not give Smith a reason for his suspension from structured recreation, and instead they advised him to ask the program supervisor.

But the program supervisor did not respond to Smith's inquiry, so he submitted a grievance. A grievance officer eventually notified Smith that his name had been removed from the list of inmates approved to participate in structured recreation because he had missed a Friday session without an excuse. This answer prompted Smith to submit a second grievance protesting that he missed the Friday session only because it was scheduled at the same time as Jumu'ah, a weekly Islamic service which he cannot miss. Again the grievance officer responded, though not as fast as Smith would have liked. According to the grievance officer's report, staff in both the recreation hall and the chapel had reported Smith as absent. Jumu'ah indeed had overlapped with structured recreation, the grievance officer found, and he surmised that a mix-up had led the recreation staff to mark Smith's absence on a Friday as unexcused and revoke his recreation privileges. Smith was assured of being reinstated to the recreation list with his prior seniority date. That took until December 2012, four months after the suspension.

Unfortunately, in February 2013, Smith again found himself suspended from structured recreation after he missed a Friday session for Jumu'ah. As before, the mistake was recognized and corrected, but this process took two months. Meanwhile, Smith had filed another grievance, this one accusing staff of acting hastily and speculating that he was taken off the recreation list in retaliation for past grievances. His tone was insolent, and although Smith achieved his objective of reinstatement to the attendance list for structured recreation, his grievance was not formally resolved because he refused to remove abusive language from the submission.

Smith filed this lawsuit in August 2013 and amended his complaint most recently in early 2015; nothing in the record suggests that further misunderstandings developed because of his Friday attendance at Jumu'ah. In screening Smith's complaint, the district court dismissed, for failure to state a claim, Smith's contention that the named defendants had violated the First Amendment by interfering with his final grievance. The court likewise concluded that Smith did not state a claim under the Eighth or Fourteenth Amendments for curtailing his recreation time. The district court understood Smith to be saying, not that the defendants had denied him all access to out-of-cell time during the six months at issue, but instead that they had kept him from attending structured recreation on Friday afternoons because that program conflicted with Jumu'ah. The district court noted that Smith might have had a colorable claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5, if he was complaining that the defendants had "failed to accommodate his desire to attend religious services," but that is not Smith's contention. The district court also recognized that Smith wants only monetary damages, which are not available under RLUIPA.

On appeal Smith repeats the substance of his claims without disagreeing with the district court's factual recitation or legal analysis. Our review is de novo. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

Smith contends that the defendants violated the First Amendment by interfering with his final grievance. But he appears to be confusing the right to *grieve* with the right to a grievance *process*. Prisoners have a First Amendment right to "petition the government for redress of grievances," *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009), but they do not have a substantive due process right to a grievance procedure, let alone an effective one, *see Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). If a prison's grievance process is so deficient as to be unavailable to an inmate, he is relieved of his duty to exhaust administrative remedies under 42 U.S.C. § 1997e(a). *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). In this case Smith achieved desired results by submitting grievances. The process of resolving those grievances was slower than Smith had hoped, but his claim of a constitutional violation is frivolous.

Also without merit is his Eighth Amendment claim. Depriving a prisoner of all opportunity for out-of-cell *exercise* can violate the prohibition against cruel and unusual punishment. *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001); *Anderson v. Romero*, 72 F.3d 518, 528 (7th Cir. 1995). Yet the district court understood Smith to be alleging that, as a consequence of missing Friday recreation sessions, he was barred from attending structured recreation *only on Fridays*; that means he still was able to attend two

other days each week. In this court Smith does not challenge the district court's reading of his factual allegations, and if the court's understanding is correct, then Smith could not possibly state a claim that he wasn't receiving adequate out-of-cell exercise. *See Delaney*, 256 F.3d at 687 (evidence that inmate was confined in segregation cell for six months without meaningful chance to exercise would establish Eighth Amendment violation); *Thomas v. Ramos*, 130 F.3d 754, 763-64 (7th Cir. 1997) (70-day restriction on outdoor exercise for segregated inmate was not unreasonable); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day restriction on outside yard time did not violate Constitution when inmate could have exercised in his cell).

More importantly, Smith's claim is about *recreation*, not exercise. He has never alleged that the fallout from the staff's mistakes about why he did not show up for structured recreation kept him from exercising adequately. In fact, in one of his grievances (which he has attached to his appellate brief) Smith all but admits that *by choice* he was not participating in "physical health exercise activities" because those activities are overcrowded and, anyway, he does not like them. Smith does not have a liberty interest in other activities. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (no right to attend cooking class); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (social and rehabilitative activities not a right). And, if he still can exercise adequately, neither would the Eighth Amendment be violated by preventing him from attending recreation.

Finally, even if the district court read Smith's complaint too narrowly and Smith was instead saying that all of his structured recreation was eliminated for a total of six months, his complaint does not plausibly allege anything more than negligence by prison staff. Negligent conduct does not violate the Constitution and cannot be redressed through an action under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 333 (1986) (government negligence is not addressed by the Constitution); *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999) ("[N]egligent conduct by a government official is insufficient to support a claim under § 1983."); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). Prison officials listened to Smith's grievances, responded, and eventually corrected their mistakes. Corrective action was not swift, but that is the nature of bureaucracy.

AFFIRMED.